Florence NEIDICH, Plaintiff,

v.

ESTATE OF Henry K. NEIDICH, Henry K. Neidich & Co., Inc., Henry K. Neidich & Co., Inc. Profit Sharing Plan & Trust, Henry K. Neidich & Co., Inc. Profit Sharing Corporate Plan, Daniel M. Neidich and Warren S. Neidich, both individually and as co-executors of the Estate of Henry K. Neidich, and Eugene Fox, individually and as Trustee of Henry K. Neidich & Co., Inc. Profit Sharing Plan & Trust and/or the Henry K. Neidich & Co., Inc. Profit Sharing Corporate Plan, Defendants.

No. 01 Civ. 7464(CM)(GAY).

United States District Court, S.D. New York.

Sept. 6, 2002.

William H. Mulligan, Jr., Bleakley, Platt & Schmidt, LLP, for Defendants.

Anthony J. Pirrotti, Pirrotti & Pirrotti LLP, Ardsley, NY, for Plaintiff.

## MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff Florence Neidich brings this action against the above named defendants for (1) a declaration that an alleged waiver of surviving spouse death benefits, pursuant to a profit-sharing plan governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (hereinafter "ERISA"), was fraudulently obtained and therefore invalid, ineffective, and unenforceable; (2) a declaration that an alleged "Beneficiary Designation and Pre–Retirement Death Benefit Form" governed by the provisions of ERISA was not a "qualified election" within the meaning of 29 U.S.C. § 1055(c)(2)(A) and the provisions of the profit sharing plan; and (3) recoupment from Daniel and Warren Neidich of funds that have unjustly enriched them. Plaintiff seeks an award of surviving spouse death benefits pursuant to the provisions of ERISA and the profit sharing plan.

All defendants move for summary judgment on all of plaintiff's claims. Defendants argue that the "Beneficiary Designa-

tion and Pre–Retirement Death Benefit Form" ("Beneficiary Designation Form") constitutes a "qualified election" pursuant to ERISA, that plaintiff's waiver of her death benefits was not fraudulently obtained and is valid, effective and enforceable, and that no award of surviving spouse death benefits or damages for unjust enrichment should be paid to plaintiff.

For the reasons stated below, all claims against Eugene Fox, Warren Neidich, Daniel Neidich, Henry K. Neidich & Co. Inc., and the Henry K. Neidich & Co. Inc. Profit Sharing Corporate Plan are dismissed. Plaintiff's Third Cause of Action is also dismissed. Defendants' motion for summary judgment on the First and Second Causes of Action as against the Estate of Henry K. Neidich and the Henry K. Neidich & Co. Inc. Profit Sharing Plan & Trust is denied.

## STATEMENT OF PERTINENT FACTS

Henry K. Neidich ("Henry" or "the decedent") and Florence Neidich ("Florence" or "plaintiff") were married on April 30, 1978. It was Henry's second marriage and Florence's third marriage. At the time they were married, Henry was 68 years old and Florence was 60. [Def. Facts at ¶ 2.] Florence and Henry had first met over 40 years earlier, and had remained friends throughout those years. [Pl. Facts at ¶ 1; Def. Facts at ¶ 5.]

Defendants Daniel and Warren Neidich ("Daniel" and "Warren") are Henry's surviving sons from a previous marriage. [Def. Facts at ¶ 3.]

Henry died on April 13, 1999 at the age of 88. He was survived by Daniel, Warren and Florence. *Id.* Daniel and Warren were appointed Co-executors under Henry's Last Will and Testament dated September 16, 1997, which was admitted to probate in the Surrogate's Court, Westchester County on June 16, 1999. *Id.* at ¶ 4.

### A. *The Antenuptial Agreement and the State Court Action*

On April 28, 1978, two days before Henry and Florence were married, they executed a two-page reciprocal antenuptial agreement (the "Antenuptial Agreement"), by which each waived all rights that either may have in the property or Estate of the other by reason of their marriage under the laws of any jurisdiction. [Def. Facts at ¶ 18.] The Antenuptial Agreement included a waiver of each person's right to elect against the other's will. *Id.* When the Antenuptial Agreement was executed, Henry and Florence each had two grown sons and grandchildren. Defendants argue that this Antenuptial Agreement was written because both Henry and Florence wanted to take care of their own estate and to look after their own children and grandchildren. [Def. Facts at ¶ 22.]

After Henry's death in April 1999, Florence filed a Notice of Election in an attempt to receive an elective share of Henry's estate as determined under EPTL § 5–1.1–A. Warren and Daniel commenced a proceeding to determine the validity and effect of Florence's Notice of Election. Daniel and Warren, as Co–Executors of Henry's Will, alleged that the Notice of Election was ineffective and in violation of the terms of the Antenuptial Agreement, and that any challenge to the Antenuptial Agreement was barred by the expiration of the applicable statute of limitations. Florence argued that the Antenuptial Agreement was void and unenforceable because it was the unconscionable product of overreaching and undue influence by Henry over her. [Def. Facts at ¶¶ 26 –27.] She also argued that the statute of limitations for a claim of fraud should be tolled during the duration of her marriage because she was unable to discover the fraud and undue influence until Henry's death.

Florence moved for summary judgment. Daniel and Warren, as Co–Executors, cross-moved for summary judgment. [Def. Facts at ¶ 28.] On November 22, 2000, Surrogate Albert J. Emanuelli denied Florence's motion and granted Daniel and Warren's cross-motion for summary judgment. Surrogate Emanuelli held that the Notice of Election was invalid and of no effect in view of the express terms of the 1978 Agreement. He held that Florence's challenge to the Antenuptial Agreement on the basis of fraud or undue influence was time-barred. [Def. Facts at ¶ 29.] In response to Florence's argument that the limitations period should be tolled during the period of her marriage, Surrogate Emanuelli noted that Florence had "failed to give a convincing explanation why 'fraud,' 'undue influence' or 'over-reaching' could not have been discovered at the time she executed the Agreement simply by reading the two-page document which she signed." [Def. Facts at ¶ 33.]

Florence appealed Surrogate Emanuelli's Decision and Order. On January 28, 2002, the Appellate Division of the Second Department of the Supreme Court of New York affirmed the lower court's ruling. *See* Decision and Order, Jan. 28, 2002, at 1.

B. *The Henry K. Neidich Co., Inc. Profit Sharing Plan & Trust*

Throughout his marriage to Florence, and until his death, Henry was President and sole shareholder of the Henry K. Neidich & Co., Inc. (the "Company"), also a defendant in this action. The Company is a corporation duly organized and existing pursuant to and by virtue of the laws of the State of New York. [Def. Facts at ¶ 7.] In 1990, the Company adopted a Standard-ized Corporate Prototype Profit Sharing Plan sponsored by Oppenheimer & Co., Inc. ("Oppenheimer") which became effective March 1, 1990. *Id.* at ¶ 8. The name of the plan is the Henry K. Neidich & Co. Inc. Profit–Sharing Plan & Trust (the "1990 Plan").[1] *Id.* The 1990 Plan succeeded a previous profit sharing plan adopted on January 28, 1980 (the "1980 Plan"), which succeeded an original and dissolved plan dated February 21, 1971 (the "1971 Plan"). *Id.* at ¶ 9. The assets maintained in the 1971 Plan were transferred to and maintained in the 1980 Plan. *Id.* at n. 5.

On or about November 26, 1990, the 1990 Plan was adopted pursuant to Henry's execution of a Prototype Form of Adoption Agreement. He proceeded, in accordance with the terms of the Adoption Agreement, to appoint Oppenheimer as Custodian under the Plan, and directed that the Plan be administered and contributions invested according to options selected and made available as set forth in the aforesaid Adoption Agreement. Henry executed the Adoption Agreement in his capacity as President of the Company and as sole Trustee of the Plan. No Successor or Co–Trustee was named in the Plan. [Def. Facts at ¶¶ 13–14.] When the 1990 Plan was adopted, the funds maintained in the 1980 plan were transferred to Oppenheimer in its capacity as Custodian. [Def. Fact at ¶ 15.] Henry never retired from the Company and never received a distribution from the 1990 Plan before his death. [Def. Facts at ¶ 16.]

1. *The Spousal Waiver*

On or about December 10, 1990, Henry executed a two page document entitled

---

1. The 1990 Plan is a defendant in this action. Plaintiff also names as a defendant the Henry K. Neidich & Co., Inc. Profit Sharing Corporate Plan. Defendants contend that no such plan exists. [Def. Facts at ¶ 11.] Plaintiff provides no evidence of such a plan. I conclude that no "Profit Sharing Corporate Plan" exists and I dismiss the other "Plan" as a defendant in this action.

"Oppenheimer & Co., Inc. Corporate Prototype Money Purchase and/or Profit Sharing Plan Beneficiary Designation and Pre–Retirement Death Benefit Form" (the "Beneficiary Designation Form"). [Def. Facts at ¶ 35.] The introductory paragraph on the first page of the form provided as follows:

In accordance with federal regulations, unless you, with the specific consent of your spouse, elect otherwise, or you should die before you are eligible to retire, the plan will use your account balance to provide a survivor annuity for your spouse as the normal form of death benefit. This annuity will provide your spouse with a series of monthly payments over his/her life.

However, you may elect to waive either or both the requirement that your spouse be your beneficiary and the requirement that the death benefit be paid to your spouse in the form of a survivor annuity. This election must be acknowledged in writing by your spouse. If the Company does not have the spouses's [sic] waiver on file at the time of your death (unless he/she elects otherwise at the time of your death), your spouse will receive a survivor annuity, even if you have designated another beneficiary and/or elected another form of death benefit.

Underneath this statement is a section titled "Designation of Beneficiary." Herein, Henry designated his sons Warren and David as equal beneficiaries, and put an "X" on a line that states "My Primary Beneficiary is not my spouse. A Surviving Spouse Benefit Waiver is signed below."

On the bottom half of the second page of the Beneficiary Designation Form is a section entitled "Surviving Spouse Death Benefit Waiver" (the "Waiver"). Directly above this section, in capital letters, is the following sentence: "THIS SECTION MUST BE COMPLETED IF YOUR SPOUSE IS NOT YOUR PRIMARY BENEFICIARY AND/OR YOUR BENEFITS ARE TO BE PAID IN A FORM OTHER THAN A SURVIVOR ANNUITY." The Waiver provides:

I hereby waive any rights to death benefits under the terms of the Plan should my spouse die prior to receiving the full value of any benefits due him/her under the terms of the Plan. I also acknowledge that my spouse may designate someone other than myself to receive death benefits under the Plan. I hereby consent to waive the pre-retirement survivor annuity form of death benefit payable under the terms of the Plan.

I hereby consent to waive the pre-retirement survivor annuity form of death benefit payable under the terms of the Plan.

There are check marks next to each of the above paragraphs. Underneath these paragraphs are the signatures of both Henry and Florence, acknowledged by Leda Madureira, a notary public of the State of New York, and dated December 11, 1990.

The written waiver is of course consistent with the Antenuptial Agreement, pursuant to which each Mr. and Mrs. Neidich waived his/her rights in the other's estate. Nevertheless, Florence Neidich contends that the waiver is invalid and unenforceable. Florence has given several different accounts of how her signature appeared on the waiver form. At her deposition in the Surrogate's Court matter, dated June 7, 2000, Florence admitted that it was her signature on the Beneficiary Designation Form, although she claimed to have signed the waiver at Harry's instruction. *See* Def. Facts at ¶ 42, Ex. H (Dep. of Florence Neidich, June 7, 2000, at 75–77.) In her Verified Complaint, Florence alleged under oath that she signed the Waiver. *See* Verified Complaint at ¶ 70 ("That the

plaintiff signed the purported Waivers on or about December 11, 1990."). Florence's subsequent deposition testimony taken on February 1, 2001, however, is unclear and contradictory.[2] *See* Dep. of Florence Neidich, Feb. 1, 2001 ("F. Neidich February Dep."), at 29–53, 64–76. Florence first testified that she did not know if she signed the Waiver, *id.* at 29–32, then denied outright that she signed the Waiver, *id.* at 33, said she was "not sure," *id.* at 34–36, had no recollection of the circumstances surrounding the execution of the document, *id.* at 36–38, may have signed only a blank document, *id.* at 39, said if she signed it, she signed it at home, *id.* at 52–53, and then ended where she began, by testifying that she did not know whether it was her signature or not, *id.* at 67–76.

In her papers opposing summary judgment, plaintiff has suddenly recovered a clear memory of the circumstances surrounding her signature of the waiver form. In Plaintiff's Statement of Facts and Florence Neidich's Affidavit, Florence states that (1) she was never shown the first page of the Beneficiary Designation Form where Warren and David were named as Henry's sole beneficiaries [Pl. Facts at ¶ 12, Neidich Aff. ¶ 14]; and, (2) the second page that contains her signature was given to Florence completely blank—the dates, Henry's signature, check marks, handwritten and typewritten information, and the notary's name and stamp were all missing from the paper [Pl. Facts at ¶ 14; Neidich Aff. ¶ 17]. The Court views plain-

tiff's sudden clarity of recollection with a great deal of skepticism. Plaintiff's affidavit contradicts prior statements made under oath, and, as discussed below, is contradicted by the acknowledgment of the notary, Leda Madureira. Additionally, plaintiff's testimony that she "may" have signed a blank piece of paper was not offered until she was prompted by her attorney to so testify. Feb. 1, 2001 F. Neidich Dep. at 38–39.

Ms. Neidich also alleges that no one else but Henry was present when she signed the Beneficiary Designation Form. Leda Madureira, the notary whose signature appears on the Beneficiary Designation Form, contends otherwise. At her deposition, Ms. Madureira testified that she worked for Henry for seven years, and occasionally notarized documents during those seven years. Ms. Madureira testified that she had known both Henry and Florence since 1984. Def. Facts at ¶ 39. Ms. Madureira also testified that she never notarized any document, paper or writing unless the person executing the document signed it in her presence or acknowledged his or her signature and provided proof of his identity. Def. Facts at ¶ 37; Madureira Dep. at 19–22. Ms. Madureira also testified that she never made a false representation in her capacity as a notary public. *Id.* Based on her knowledge of her own practices and procedures, Ms. Madureira testified that she took Florence's signature in her office at the Company, although she does not directly recall the

---

**2.** Florence's second, and last deposition was taken in February 2001, before she filed this action in Federal Court. In August 2000, before the Surrogate's Court decision in the action over the Antenuptial Agreement, Florence filed a lawsuit in Supreme Court, Westchester County seeking money damages for fraud and unjust enrichment against many of the defendants in this action. Defendants filed a motion for summary judgment on the grounds that the action was preempted by

ERISA. Hon. Nicholas Colabella granted this motion by Decision and Order dated July 5, 2001. In August 2001, Florence filed the Verified Complaint with this Court seeking relief under ERISA. The parties cite the February 2001 deposition as relevant to this action since it addresses the same transaction at issue in this action—the effectiveness of Florence's waiver of her spousal rights and the actions of Henry Neidich in persuading her to sign the Beneficiary Designation Form.

event. Ms. Madureira stated that she had no doubt that both Henry and Florence were in her presence when she notarized the Beneficiary Designation and spousal waiver forms. Def. Facts at ¶ 38; Madureira Dep. at 23–33. Plaintiff offers no evidence to contradict Ms. Madureira's testimony that she in fact complied with the law whenever she notarized documents.

At the time of his death, the value of Henry's account balance in the 1990 Plan was approximately $781,716.00. Upon his death, Oppenheimer segregated the account into two separate accounts for the benefit of each Warren and David Neidich. Each son received a distribution in 1999 of $35,000 which represented Henry's required minimum distribution from the 1990 Plan. In 2000, each son received a distribution of $11,500. Each son was scheduled to receive a distribution of about $12,000 for the year 2001. The remainder of the assets remain under Oppenheimer's control for the benefit of Daniel and Warren.

## C. The Federal Action

The instant action was filed in this Court on August 10, 2001. In her Verified Complaint, Florence alleges five causes of action: (1) in her First Cause of Action, against the Plan and the Estate of Henry Neidich, Florence alleges that the Waiver, which is governed by the provisions of ERISA, was fraudulently obtained by Henry's breach of his fiduciary duty, and by his undue influence over her, and she seeks a declaration that the purported Waiver was therefore invalid, ineffective and unenforceable; (2) in the Second Cause of Action, plaintiff seeks a declaration that the Beneficiary Designation Form, which is governed by the provisions of ERISA, is not a "qualified election" within the meaning of 29 U.S.C. § 1055(c)(2)(A) and the provisions of the 1990 Plan, and therefore her purported Waiver is ineffective; (3) in her Third

Cause of Action, against the Plan, plaintiff seeks a monetary award of surviving death benefits pursuant to the provisions of ERISA and the 1990 Plan in the sum of $781,716.00; (4) in her Fourth Cause of Action, plaintiff seeks money damages in the amount of $390,858.00 against defendant Daniel M. Neidich for his "unjust enrichment"; and, (5) in her Fifth Cause of Action, plaintiff seeks money damages in the amount of $390,858.00 against defendant Warren S. Neidich for his "unjust enrichment." Plaintiff seeks a declaration that the waiver was ineffective or was the result of Henry's breach of his duties to her, presumably clarifying her rights pursuant to 29 U.S.C. § 1132(a)(1).

Defendants move for summary judgment dismissing the entire action on the grounds that the Waiver is valid and binding under the provisions of ERISA, and plaintiff has not sufficiently established a claim of breach of fiduciary duty or fraud and undue influence.

## DISCUSSION

### I. Summary Judgment Standard

To prevail on a summary judgment motion, the moving party must show that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir.2001). Nonetheless, a plaintiff faced with an properly supported summary judgment motion must "do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). She must come forth with evidence sufficient to

allow a reasonable trier of fact to find in her favor. *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001) (citing *McCarthy v. New York City Technical College,* 202 F.3d 161, 167 (2d Cir.2000)).

## II. *Second Cause of Action—Effective Waiver Pursuant to ERISA § 205(c), 29 U.S.C. § 1055(c)(2)*

Because summary judgment on the second cause of action would moot the rest of the case, I discuss it first.

Plaintiff alleges that she did not effectively waive her rights in her husband's profit sharing retirement plan.[3] Defendants counter that the Beneficiary Designation Form is an effective waiver of plaintiff's spousal rights pursuant to ERISA § 205(c), 29 U.S.C. § 1132(c). Defendants argue that "Taking her at her word, Florence can at best establish only that she totally abdicated the entirety of her adult responsibilities and common sense by failing to ask what she was being asked to sign when she signed it, not reading the Waiver before she signed it, and asking no questions about it." Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 11. Defendants contend that the evidence demonstrates without contradiction that Florence Neidich signed the waiver of her own free will.

■ Genuine issues of fact preclude summary judgment on this claim.

■ An effective waiver under ERISA requires that:

1. The spouse of the participant consents in writing to such an election;

2. The election designates a beneficiary (or a form of benefit) that may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse);

3. The spouse's consent acknowledges the effect of the election; and

4. The consent is witnessed by a plan representative or notary public.

29 U.S.C. § 1055(c)(2). These waiver requirements must be strictly complied with. *See, e.g., McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990). This is especially true given Congress' intent to protect spouses' rights to their spouses' retirement benefits. *See* S.Rep. No. 98–575, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2547. "ERISA contains strict rules for protecting the spouse's interest in the participant's benefits.... Under ERISA, waiver of the qualified joint and survivor annuity, the standard form of payment from a defined benefit plan to a participant before death, is invalid unless it satisfies the rigorous rules in § 1055(c)." *Rice v. Rochester Laborers' Annuity Fund,* 888 F.Supp. 494, 498 (W.D.N.Y.1995) (quoting *Lester v. Reagan Equip. Co. Profit Sharing Plan & Empl. Savings Plan,* Civ. Action No. 91–2946, 1992 WL 211611, at *5 (E.D.La. Aug.19, 1992)).

The waiver form on which defendants rely complies on its face with § 1055(c). Thus, the question before me is whether there is a genuine issue of fact concerning the circumstances under which plaintiff signed the document—or whether she in fact signed the document. I conclude that there is.

In her Verified Complaint, plaintiff states that she signed the waiver, but was fraudulently induced to do so by her hus-

---

**3.** Defendants do not contend that plaintiff waived her rights in the 1990 Plan through her execution of the Antenuptial Agreement, because such agreements do not effectively waive a spouse's claims to spousal death ben-

efits under an ERISA-governed plan. *See Hurwitz v. Sher,* 982 F.2d 778 (2d Cir.1992). Neither do they contend that Surrogate Emmanuelli's decision has any preclusive effect as to this cause of action, which it does not.

band. Plaintiff has changed her allegation slightly—she still alleges undue influence and breach of fiduciary duty, but she now claims that she signed only a blank sheet of paper, and that all of other writing that now appears on the waiver was typed in after she signed this piece of paper.

As the evidence summarized above makes clear, Florence Neidich has told different stories at different times about how her signature came to appear on the document. Her Verified Complaint and deposition testimony from the Surrogate's Court Action indicate that she did sign the Beneficiary Designation Form as it now exists, and did so because Henry told her to sign. Ms. Neidich's deposition testimony in this action is muddled; its main gist is that she has no clear recollection of the circumstances surrounding the signing the Beneficiary Designation Form. As noted above, she gave six different versions of how she came to sign it (or not sign it) during the course of a single day's testimony. And at one point, Ms. Neidich—for the first time—indicated that it was possible that she might have signed a blank piece of paper with none of the waiver terms written on it, which is the theory she is now proffering. Neidich Feb. 1, 2001 Dep, at 38–39. Ms. Neidich testified as follows:

Q. Paragraph 70 [of the Verified Complaint] alleges, and this is a complaint you swore to its accuracy that on December 11th, 1990, "The plaintiff Florence Neidich signed the waivers," the waivers being this document. That is what your complaint says, and I'm just trying to establish whether this allegation is accurate.

*      *      *      *      *      *

A. All I can say is it looks like my signature. I don't remember anything else about where or how I signed it, and that's all.

Q. That's fair. That's all I'm trying to establish. Now, do you recall then whether you read this document before you may have signed it?

A. No.

Q. You don't remember or you did not?

A. No, I did not have the document; I didn't see it.

Q. But you say it looks like your signature?

A. It looks like my signature.

Q. So you had the document if you in fact signed it; would you agree with me?

A. I didn't have the document.

Q. Well, who had the document?

Mr. Pirrotti: Why don't you ask, sir, whether the document that she had that the signature in which that she has here, there could have been nothing on this document. You haven't established a predicate for your question.

Mr. Mulligan: It's been very hard because she's not sure whether she signed it or not.

Mr. Pirrotti: I think that again -

Mr. Mulligan: Are you suggesting, Mr. Pirrotti, that Mrs. Neidich may have signed a document in blank?

Mr. Pirrotti: Yes.

Q. Is that what you are saying, Mrs. Neidich?

A. It could be; I don't remember.

Q. That's fair. That it could be you signed something which had no printing on it; is that what you are saying?

A. All I know is that when my husband gave me something to sign, I signed it. I—I don't know anything else about it, what it's for or anything else.

*Id.*

Between the date of her deposition and the date she signed her affidavit opposing

summary judgment, Ms. Neidich developed certainty about the circumstances surrounding her signature. In her Affidavit, Ms. Neidich affirms that "On December 11, 1990, Henry only showed me the second page and told me were [sic] to sign." Neidich Aff. ¶ 14. "Further, when I was given the second page to sign, it did not appear as it does today, rather, it was blank. The dates, my husband's signature, check marks, handwritten and typewritten information and the notary's name and stamp were not on the paper." *Id.* at ¶ 17. "Despite allegations to the contrary, I did not sign this, or for that matter any other paper, in HENRY's office. It was customary for HENRY to bring documents that required my signature home with him, at which time I would sign them as he directed. The same was true for this paper; I signed the paper in our home. Further, because I would sign documents at our home, there would not be anyone other than HENRY present when I signed. There was no else present when I signed the subject paper." *Id.* at 18.

■ The evolution of Ms. Neidich's story about how her signature came to appear on the Beneficiary Designation Form raises troubling issues and casts considerable doubt on her veracity. But courts do not sit to judge witness credibility on a motion for summary judgment. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996). If there is a genuine question as to whether Ms. Neidich consented in writing to the spousal waiver of her husband's retirement benefits—viewing the facts most favorably to her, as I must—I can not grant defendants' motion for summary judgment on this claim.

■ The underlying issue is whether plaintiff has crafted her testimony to create an issue of fact that did not exist prior to the filing of the summary judgment motion. "A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes,* 84 F.3d at 619 (citing *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)) (examining an omission of fact in a four-day deposition); *see also Martin v. City of New York,* 627 F.Supp. 892, 896 (E.D.N.Y.1985) (examining direct contradiction between deposition and affidavit). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma,* 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion do not raise "genuine" issues for trial. *Id.*

Defendants allege that Florence's affidavit contradicts her prior deposition testimony. And it is true that in Florence's affidavit—crafted to oppose defendants' motion for summary judgment—she first states *with certainty* that she never saw the first page of the Beneficiary Designation Form before Henry's death, and that she never signed the second page of the form as it now appears, but signed only a blank sheet of paper upon Henry's instruction.

However, in her deposition testimony in the prior related Westchester County Supreme Court action (see note 2), Ms. Neidich did raise the *possibility* that she signed only a blank piece of paper, even if this possibility was one of many she mentioned. That deposition occurred on February 2, 2001, six months before this federal action was filed and almost a year

before defendants filed their motion for summary judgment. Thus, Ms. Neidich did not first raise this issue in her opposition to the motion for summary judgment.

The multiple inconsistencies in Florence's pre-trial testimony do indeed give the court pause. However, Ms. Neidich was 83 years old when she gave her deposition, and seemed to be flustered and confused by some of the questioning. *See* Errata Sheet to February 2, 2001 Neidich Deposition ("I was tired and not feeling well at the time of the examination and it was very hard for me to concentrate and listen to all of the questions. I am nearly 84 years old and the trip from Florida back to New York just prior to the examination before trial was exhausting."). A trier of fact could find that Florence's age and state of mind affected her deposition testimony to her detriment, and that her memory was clearer and more accurate when conferring with her attorney while crafting her affidavit. Admittedly, a trier of fact could also conclude that the attorney, rather than Florence, was the driving force behind the affidavit. But that is not for me to say.

Additionally, because there is testimony in Florence's deposition that does not contradict the affidavit, it appears that the rule of *Diebold* does not come to play here. *Hayes v. New York City Department of Corrections*, cited earlier, provides some guidance on this point. In *Hayes*, plaintiff gave two depositions. Both were submitted in opposition to defendants' motion for summary judgment. The district judge found that plaintiff's second deposition contradicted his first, and concluded that this was done to create a material issue of fact where there was none prior to the second deposition. The court therefore disregarded the second deposition to the extent that it filled the gaps of the first deposition with inconsistent testimony, much as we commonly disregard affidavits created after summary judgment motions are filed that contradict depositions. Applying the summary judgment standard to the remaining facts, the district court concluded that the defendants were entitled to summary judgment because there was no material issue of fact. *Hayes*, 84 F.3d at 619.

The Second Circuit reversed the district court. The Appeals Court held that the district court erred in disregarding the portions of plaintiff's second deposition, finding that the second deposition was not taken in response to the motion for summary judgment, the circumstances surrounding the first deposition were different than the second, and that the depositions were only arguably contradictory— plaintiff was certain of the identities of several people and the circumstances of a particular event in his second deposition, but this did not clearly contradict the less specific testimony in his first deposition. *Id.* at 619–20. The Appeals Court held that it could not conclude that the two depositions were contradictory without drawing an improper inference as to the plaintiff's credibility. *Id.* at 620.

The same is true here. If the court were to discredit plaintiff's affidavit because it unequivocally states that plaintiff did not sign the Beneficiary Designation Form, when her deposition testimony only raised that issue as a possibility, I would be improperly concluding that the plaintiff was more credible in her deposition than in her sworn affidavit.[4] *Id.; see also Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir.

---

4.  Courts have noted that deposition testimony is generally more reliable than a sworn affidavit. *See Perma*, 410 F.2d at 576. Ms. Neidich's apparent confusion during her deposition undercuts that rule, but the role of her attorney in certifying her affidavit (if he played one) does not inspire confidence in the affidavit, either.

2000) (finding that the *Perma* principle "does not apply if the deposition and the later sworn statement are not actually contradictory") (citing *White v. ABCO Engineering Corp.*, 221 F.3d 293, 304 (2d Cir. 2000)); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (*Perma* principle does not apply where the later sworn assertion addresses an issue that was not, or was not thoroughly or clearly, explored in the deposition).

Furthermore, none of the defendants was present for the alleged signing. Leda Madureira, the woman who notarized the form, testified that she would never notarize a signature without the signatory in her presence, and this is strong evidence in defendants' favor. *See Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 294 (7th Cir.1994) ("A notary public's certificate of acknowledgment, regular on its face, carries a strong presumption of validity.") (citing 1 Am.Jur.2d *Acknowledgments* § 83 (1994)). However, Ms. Madureira does not recall notarizing this particular form, and the presumption that her acknowledgment carries can not overcome the issue of fact raised by Ms. Neidich's sworn statements.

Since there exists an issue of fact concerning whether Florence gave written consent to Henry Neidich's non-spousal beneficiary designation, I decline to grant summary judgment to defendants on the second cause of action.

## III. *First Cause of Action—Breach of Fiduciary Duty/Undue Influence Claim*

Defendants also move to dismiss plaintiff's First Cause of Action alleging that she signed the waiver as a result of Henry Neidich's breach of a fiduciary duty owed to her by the trustee of the 1990 Plan. Plaintiff's First Cause of Action purports to arise under both state and federal law; she alleges both that Henry breached his fiduciary duty to her (under ERISA) and

that he exercised undue influence over her and concealed information from her (as her husband).

### 1. *Preemption*

To the extent that her theory of recovery is grounded in state law, it is preempted by ERISA.

▪ Florence claims that, as a result of Henry's undue influence and fraudulent concealment about the survivorship benefits under the 1990 Plan, the purported waiver of those benefits under the 1990 Plan was "made without consideration, without any explanation of the document or its effect, at the command of Henry K. Neidich, with whom Florence Neidich shared a confidential relationship, at a time when she was 73 years of age." Plaintiff's Memorandum of Law at 21. This claim arises under New York, not federal, law.

Section 514(a) of ERISA provides that the statute "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).

▪ The purpose of Congress is the "ultimate touchstone" when it comes to determining whether a federal law preempts a state law. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 144 (2d Cir.1989). "We must seek to give effect to the full purposes and objectives of federal statutes. At the same time, we must assume that the historic police powers of the States were not to be superceded by [a] Federal Act unless that was the clear and manifest purpose of Congress". *Id.* (internal citations and quotations omitted).

▪ The Supreme Court has held that the ERISA preemption provision "[is] deliberately expansive and designed to 'establish pension plan regulation as exclu-

sively a federal concern.' " *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)). The words "relate to" in § 1144(a) are to be interpreted broadly—ERISA preemption is not limited to state laws specifically designed to affect employee benefit plans. *Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). However, the Supreme Court has also recognized that Congress could not have meant to preempt all laws having an impact on an ERISA plan, no matter how small or tangential. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan". *Id.*

■ Plaintiff's common law claims of fraud and undue influence are clearly preempted by ERISA in this action. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2d Cir.1992). In *Diduck,* plaintiff alleged a common law fraud action against the fiduciary of her ERISA plan. The Court held that "The fraud alleged 'relates to' an ERISA-regulated employee benefit plan because it concerns the conduct of a fiduciary and third parties in relation to the plan. The exclusive remedy for improper conduct is under § 502(a) [29 U.S.C. § 1104(a) ]."[5] *Id.* (citing *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). "A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Id.; see also Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.), *cert. denied,* 493

U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

In this action, plaintiff's allegations of fraud and undue influence are mirrored by her allegations that Henry breached his fiduciary duty to her—a claim that manifestly arises under ERISA (see below) Thus, ERISA preempts recovery under her alternative theory.[6]

### 2. *Breach of Fiduciary Duty Under ERISA*

■ Plaintiff alleges that her husband, the late Henry Neidich, breached a fiduciary obligation he owed to her as administrator of the 1990 Plan. She argues that Henry Neidich failed to determine the adequacy of Florence Neidich's consent in connection with the waiver of her spousal benefits. Defendants argue that this cause of action should be dismissed because the record contains no evidence of such a breach.

■ Henry Neidich was the sole trustee and administrator of the 1990 Plan. Florence Neidich was the natural beneficiary of the 1990 Plan in the event of Henry's death. A fund's administrator, as a fiduciary, is required to act in all cases to protect the interest of beneficiaries such as plaintiff. *See John Blair Communications v. Telemundo Group,* 26 F.3d 360, 367 (2d Cir.1994). "Where fiduciary duties arise under ERISA, they must be enforced without compromise to ensure that fiduciaries exercise their discretion to serve all participants in the plan." *Id.*

---

**5.** The plaintiff in *Diduck* also alleged common law fraud against non-fiduciary third parties. The Court held that those claims were preempted along with the fraud claims against the fiduciary. That holding, however, has been called into serious doubt because ERISA does not regulate the activities of non-fiduciaries. *See, e.g., Gerosa v. Savasta,* 189

F.Supp.2d 137, 145–46 (S.D.N.Y.2002). The *Diduck* court's holding on preemption of fraud claims against fiduciaries is still valid.

**6.** Of course, evidence of undue influence or fraudulent concealment will be relevant to plaintiff's claim against Henry's estate for Henry's breach of fiduciary duty.

The duties owed by a fiduciary under ERISA are codified at 29 U.S.C. § 1104 which, in relevant part provides:

(A) Prudent man standard of care[:] (1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and the beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

*Id.*

The statute does not enumerate the duties owed by a fiduciary to a plan beneficiary, so the courts have been called upon to define the scope of the fiduciary's responsibilities. *Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir.1996) (citing *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir. 1993)).

As a trustee and administrator of the 1990 Plan, Mr. Neidich had an affirmative duty not to misrepresent the terms of his employee benefit plan. *See, e.g., Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir. 1994); *Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 57 F.3d 1255 (3d Cir.1995). In addition, an ERISA plan administrator must furnish its participants and beneficiaries with a Summary Plan Description ("SDP") "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). An SDP "shall contain ... the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b).

*See also Becker v. Eastman Kodak Co.,* 120 F.3d 5, 8 (2d Cir.1997).

Plaintiff claims that she had no knowledge of the 1990 Plan before Henry Neidich's death, and that Henry, as a fiduciary, never explained to her the rights she had under the 1990 Plan, and the rights that she waived by signing the Beneficiary Designation Form. On the record before me, it is not clear how much information Henry Neidich, in his capacity as a fiduciary of the 1990 Plan, provided to Florence Neidich, a beneficiary of the 1990 Plan. Furthermore, Florence claims that she never had an opportunity to read the Beneficiary Designation Form—she allegedly signed either a blank piece of paper, or in the alternative, signed only the second page of the Form. Defendants argue that Ms. Neidich signed the form before a notary, and should have read it to apprise herself of her rights, but the notary has no memory of this particular attestation. There is therefore a genuine issue of fact as to whether Henry performed his fiduciary duty with respect to Florence Neidich's rights as a beneficiary to the 1990 Plan. Henry was under a duty to protect her interests as a beneficiary of the 1990 Plan, and I can not conclude on the record before me that Henry actually fulfilled this duty. I thus decline to grant summary judgment dismissing plaintiff's claim for breach of a fiduciary duty against Henry Neidich.

## IV. Other Breach of Fiduciary Duty Claims

Plaintiff names Eugene Fox and Henry K. Neidich & Co. Inc. as defendants in this action. From her Complaint, it is unclear under which cause of action she seeks relief from either entity. In supplemental briefing filed with this Court, plaintiff asserts that she seeks relief from both entities under the theory that they breached a

fiduciary duty owed to her under ERISA. Such a claim must fail. Plaintiff has not stated, and cannot state, a claim against either Eugene Fox or Henry K. Neidich & Co. Inc. for a breach of fiduciary duty, and all claims against both these defendants are dismissed with prejudice.

### 1. *Eugene Fox*

Eugene Fox must be dismissed as a defendant. Plaintiff alleges that Mr. Fox was a trustee of the 1990 Plan, and in that capacity, breached his fiduciary duties to her. But there is not a scintilla of evidence that Mr. Fox was ever a trustee of the 1990 Plan. Fox Reply Aff. ¶ 3. Defendants claim that Henry Neidich was the sole and exclusive trustee of the 1990 Plan until his death. *Id.* Plaintiff has presented no evidence to refute this contention. As a result, there is no viable claim against Mr. Fox—individually or as a trustee of the 1990 Plan. He owed no fiduciary duty to Ms. Neidich. There is no evidence that he perpetrated any fraud to get her to sign the Beneficiary Designation Plan. In fact, there is no evidence that the two of them ever discussed the 1990 Plan or the Beneficiary Designation Form before Mr. Neidich's death. The claim against Eugene Fox is dismissed.

### 2. *Henry K. Neidich & Co. Inc.*

█ Plaintiff asserts that decedent's employer, Henry K. Neidich & Co. Inc. (the "Company"), as sponsor or as the entity that adopted the Plan, had the ability to amend the Plan, terminate the Plan and exercise certain other powers over the Plan which constitute such discretionary authority as to constitute it as a fiduciary to the Plan and a proper party defendant. Defendants claim that the Company is not a proper party defendant because there is no allegation, much less any evidence, that the Company engaged in any act of "administration" or "management" within the ERISA "fiduciary" context necessary to

implicate any liability on its part in this case. I agree.

█ In *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court distinguished between a plan sponsor's settlor functions and its fiduciary obligations. In order to be liable for a breach of fiduciary duty, the sponsor must have acted as a fiduciary in its administration and management of the Plan vis a vis the plaintiff. *Id.,* 516 U.S. at 498–99, 116 S.Ct. 1065. Stripped to its essentials, plaintiff is only claiming that she was induced to sign a waiver of death benefits by Mr. Neidich which did not comport with the requirements of ERISA. Such allegations have nothing to do with the "management" of the Plan by the Company, either as an employer or plan administrator. In *Varity*, plaintiffs established the right to appropriate equitable relief to individuals harmed by the deliberately misleading communications of corporate representatives regarding the likely future of plan benefits. In this case, Mr. Neidich allegedly acted on his *own* behalf, not on the Company's behalf, to induce plaintiff's actions—a very different scenario than in *Varity*. Plaintiff has made no allegation of breach of a fiduciary duty by the Company, nor has she presented any evidence that the Company breached its duty. Indeed, I harbor some doubts as to whether a corporation (as opposed to the individual who runs it) can "breach" any "fiduciary duty" to anyone. The claims against the Company are hereby dismissed.

### V. *Remaining Causes of Action*

Defendants move to dismiss plaintiff's Third, Fourth and Fifth Causes of Action because plaintiff seeks relief unavailable under either the 1990 Plan or ERISA.

### 1. *Third Cause of Action Against the Plan*

In her Third Cause of Action, plaintiff alleges that the Plan has denied her death benefits that are rightfully hers, and seeks payment of the full value of the death benefits in the amount of $781,716.00.

In her Complaint and in her legal memoranda, plaintiff fails to explain under what provision of ERISA her Third Cause of Action is brought. ERISA must provide for the appropriate relief against the Plan in this action. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 144 (2d Cir.1989). A cause of action seeking a lump sum payment of the worth of the death benefit plan, without alleging some theory that falls under the scope of ERISA—such as unjust enrichment, breach of fiduciary duty or ineffective waiver—is preempted by ERISA. *See Diduck*, 974 F.2d at 288; *Borges*, 869 F.2d at 146.

### 2. *Fourth and Fifth Causes of Action Against Warren and Daniel Neidich*

In her Fourth and Fifth Causes of Action, plaintiff alleges that both Warren and Daniel Neidich were unjustly enriched when the death benefits under the Plan were transferred to each of them, and seeks the payment of $390,858.00 from Daniel Neidich and $390,858.00 from Warren Neidich. In plaintiff's Complaint, no ERISA provision was cited in support for plaintiff's unjust enrichment claims.

On June 12, 2002, this Court asked for supplemental briefing as to what provision of ERISA, if any, plaintiff relies on for relief in these causes of action. I also asked whether plaintiff could maintain *any* claim under ERISA against Warren and Daniel Neidich. In response, plaintiff claims that Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides for relief against Warren and Daniel Neidich and authorizes an award of the death benefits received by them since Henry Neidich's death.[7] Pl. Supplemental Br. at 10.

Section 502(a)(3) of ERISA provides that an ERISA plan participant or beneficiary may bring a civil action to "enjoin any act or practice in violation of ERISA or the terms of the plan or obtain appropriate equitable relief to redress violations or enforce any provisions of ERISA or the terms of the plan." In support of her claim against Warren and Daniel Neidich for unjust enrichment, plaintiff asserts that she is entitled to "other appropriate relief" under Section 502(a)(3) in order to recover the money they have received and will receive from the Plan. Pl. Supplemental Brief at 10 & 12. Plaintiff is wrong because she seeks legal, not equitable, restitution.

The equitable remedy of restitution is appropriate only where there has been a showing of unjust enrichment. *See Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir.2001). *See also Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570–71, 110

---

7. Plaintiff also alleges that Warren and Daniel are fiduciaries, as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1102(21)(A), because they have "the power to determine when distributions are to be made to them from the Plans," and "the power to remove assets which are part of Plaintiff's benefit." Pl. Supplemental Brief at 6. She offers no evidentiary basis for this argument. Neither Warren nor Daniel Neidich is a "fiduciary" of the 1990 Plan. They remain passive beneficiaries. They do not exercise control over the assets, are not responsible for investing the assets and are not liable for any losses that occur as a result of the breach of the duty to invest prudently. Labor Reg. 57, Fed.Reg. 198, 10/13/1992 p. 46923. Plaintiff thus may not maintain a claim against Warren and Daniel as fiduciaries of the 1990 Plan.

S.Ct. 1339, 108 L.Ed.2d 519 (1990); *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 22 (2d Cir.1996). Restitution for unjust enrichment may be sought under ERISA only if the nature of the restitution is equitable, not legal. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

■ In *Knudson,* the Supreme Court noted that when money has been distributed, and "where the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' " and such a claim for restitution can not lie in equity because it would seek to impose personal liability on the defendant. *Knudson,* 122 S.Ct. at 714 (quoting *Restatement of Restitution,* § 215, Comment a, p. 867 (1936)). The Court essentially divided claims for restitution into legal and equitable claims. A plaintiff's claim, for example, is considered to be legal if he or she seeks to obtain personal liability upon the defendant to pay a sum of money. By contrast, restitution lies in equity when sought in the form of a constructive trust or equitable lien, or when "money or property could be traced to a particular fund or property in the defendant's possession." *Id.,* 122 S.Ct. at 714.

Florence Neidich seeks legal, not equitable, restitution from Warren and Daniel Neidich under ERISA. In her complaint, plaintiff seeks $390,858.00 from Warren and $390,858.00 from Daniel. Neither Warren nor Daniel have received these funds; rather, the vast majority of these funds remain under the control of the Plan Administrator. The money already dispersed to Warren and Daniel can not be recovered in equity pursuant to ERISA, § 502(a)(3), because these disbursements can no longer be traced to a particular fund. Ms. Neidich's position as to those disbursed funds is that of a creditor seeking legal restitution. No such action lies under section 502(a)(3).

■ The question remains as to whether plaintiff may seek payment of the amounts already paid to Warren and Daniel by the Plan under a common law unjust enrichment claim. Plaintiff herself, though, clearly stated that "the causes of action set forth in the instant action fall within the statutes of ERISA." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, at 3. Furthermore, any state law claim plaintiff would bring against Warren and Daniel Neidich for unjust enrichment is preempted by ERISA. *See Raff v. Travelers Insurance Co.,* 90 Civ. 7673, 1996 WL 137310, at *3–4 (S.D.N.Y.1996) (holding that plaintiff's claim for unjust enrichment was preempted by ERISA because it was intertwined with the insurance provided by the ERISA plan). Any common law claim for unjust enrichment would be based on the validity of plaintiff's waiver, and the payments already made by the Plan to Warren and Daniel. Section 514(a) of ERISA explicitly provides that ERISA preempts such claims. 29 U.S.C. § 1144(a).

Since plaintiff can not state a claim against Warren and Daniel for unjust enrichment under ERISA, and a state law claim for unjust enrichment is preempted by ERISA, plaintiff's fourth and fifth causes of action are dismissed.

## CONCLUSION

For the reasons stated above, summary judgment is denied as to Plaintiff's First and Second Causes of Action as against the Estate of Henry Neidich and against the Henry K. Neidich & Co. Inc. Profit Sharing Plan & Trust. Summary judgment is granted as to plaintiff's Third, Fourth and Fifth Causes of Action. Eugene Fox, Henry K. Neidich & Co. Inc.

and the "Henry K. Neidich & Co., Inc. Profit Sharing Corporate Plan" are dismissed entirely from this action.

Only ERISA claims remain to be tried in this action. Since there is no right to a jury trial in a suit brought to recover ERISA benefits, *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1259 (2d Cir.1996), this case will be decided in a bench trial. A pre-trial conference before me will be scheduled as soon as possible.

This is the decision and order of this Court.