**In re SYNCOR ERISA LITIGATION.**

**Nos. CV 03–2446LGBRCX, CV 03–6503, CV 04–247.**

United States District Court,
C.D. California.

March 28, 2005.

**339**

Lynn L. Sarko, T. David Copley, Keller Rohrback, LLP, Seattle, WA, Richard S. Schiffrin, Joseph H. Meltzer, Edward Ciolko, Edward W. Chang, Schriffin & Barroway, LLP, Radnor, PA, Christopher Kim, Lisa Ji-Hae Yang, Lim, Ruger & Kim, LLP, Los Angeles, CA, for Plaintiffs.

Ted Allen Gehring, Benjamin L. Zazove, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, for Syncor International Corp. and Robert G. Funari.

Steven M. Goldsobel, Franscica Mok, Chris C. Scheithauer, McDermott, Will & Emery, Los Angeles, CA, Nancy G. Ross, McDermott, Will & Emery, Chicago, IL, for Monty Fu.

## AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION

BAIRDS, District Judge.

## I. INTRODUCTION

Current and former beneficiaries of the Syncor International Corporation's 401(k) plan seek class action certification.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Syncor International ("Syncor") was a health care services company.[1] Syncor sponsored, administrated and was the fiduciary of the Syncor Employees' Savings and Stock Ownership Plan (the "Plan"). (Consolidated Complaint ("CC") ¶ 21.) The Plan is a 401(k) plan which permits participants to save for retirement and it is a plan under the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶¶ 2, 39. The Plan also includes an employee stock ownership plan ("ESOP") which invests primarily in the common stock of the company. *Id.,* Ex. A, "Introduction."

Syncor's Board of Directors ("Board") had final decision-making authority regarding all aspects of plan administration. *Id.* ¶ 23. The Board members included: Monty Fu, Syncor's co-founder and chairman of the Board; Robert Funari, Syncor's chief executive officer, president, and Board member; George Oki; Benard Puckett; Ronald Williams; Steven Gerber; Arnold Spangler; and Gail Wilensky. *Id.* ¶¶ 24–31. The Board appointed a separate committee ("Plan committee") to oversee the Plan's operation and carry out certain delegated Plan administrative duties. *Id.* ¶ 34.

1. Cardinal Health, Inc., acquired or merged with Syncor on January 1, 2003. (Consolidated Complaint ¶ 20.)

There were three separate parts of the Plan. First, the Plan permitted participants to contribute between one and 14 percent of their compensation to the Plan each pay period in a "Fund Deferral Account." *Id.* ¶ 53. Participants could invest in any of nine available investment funds chosen by Syncor. *Id.*, Ex. B, Summary Plan Description ("SPD") at 272, 274. Second, participants could invest up to an additional two percent of pre-tax contributions in the Syncor Stock Deferral Account. *Id.* This account was used to purchase Syncor Common Stock. *Id.* Third, Syncor established accounts in which Syncor made employer contributions in the form of Syncor stock. *Id.* at 272. These contributions were made in the "Stock Investment Company Account." (CC ¶ 59; Ex. B, SPD at 281.)

During the purported class period, Syncor stock constituted between 66 and 77 percent of the Plan's assets. *Id.* ¶ 63.

On June 14, 2002, Syncor and Cardinal Health, Inc. ("Cardinal") announced that Cardinal would acquire Syncor in a stock-for-stock merger valued at approximately $1.1 billion. *Id.* ¶ 118. Cardinal announced on November 6, 2002, that it had uncovered illegal payments made by Syncor in Taiwan and China. *Id.* ¶ 121. Upon disclosure of the payments, the price of Syncor stock plummeted. *Id.* By November 8, 2002, the stock had hit a 52-week low, and devalued more than 50 percent in just two trading days. *Id.* ¶ 122. The plummeting share values created losses to the Plan, which was heavily weighted in Syncor stock. As a result of the allegations, Cardinal reduced the exchange rate of 0.52 shares of Cardinal stock for each Syncor share to 0.47. *Id.* ¶ 124. This reduced the consideration to be paid to Syncor shareholders by at least $63 million. *Id.*

The plaintiffs in this case were employed at Syncor between July 26, 2000 and January 1, 2003 (the "class period") and participated in the Plan.[2] *Id.* ¶ 3. Plaintiffs filed the consolidated class action complaint on February 24, 2004 against Syncor, Syncor's Board, and the Board's Plan committee. *Id.* ¶ 7.

The Consolidated Complaint contained four causes of action. On August 23, 2004, this Court dismissed two causes of action against all defendants and dismissed a third cause of action against the Plan committee members only. (August 23, 2004, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, at 37:11–21.)

## A.  The Remaining Claims

Two causes of action remain after the August 23 Order. The first, against Syncor only, is for breach of fiduciary duty for failure to prudently and loyally manage Plan assets under ERISA sections 404(a)(1)(A)-(D) and 405, 29 U.S.C. §§ 1104(a)(1)(A)-(D) and 1105. (CC ¶¶ 153–164.) The second, against both Syncor and the Director Defendants,[3] is for failure to monitor the Plan committee members and provide them with accurate information under ERISA sections 404(a)(1)(A)-(D) and 405. *Id.* ¶¶ 165–177.

The first cause of action involves Plaintiffs' allegation that Syncor stock was an imprudent investment because throughout the class period Syncor was engaging in an illegal foreign bribery scheme in order to increase overseas sales of its radiopharmaceutical services. *Id.* ¶¶ 79–107. Plaintiffs claim that defendants emphasized to Plan participants and beneficiaries—prior to and throughout the class period—that international business was a key source of growth for the company. *Id.* ¶¶ 81, 108–117. Because Plan participants did not know about the bribery scheme, Plaintiffs argue that defendants misled them about the appropriateness of investing in Syncor stock. *Id.* ¶ 117. Plaintiffs contend that Defendants either knew or should have known that Syncor stock was not a prudent Plan investment. *Id.* ¶¶ 127–137.

Plaintiffs also allege that defendants had a conflict of interest because a significant per-

---

**2.** The individual plaintiffs are Carol Pilkington, Donna Brown, Cynthia Dunn, Antoinette Hart, Shirley Nobrega, Deborah Pinner, Pamela Thomson and Cherie Brannan (collectively "Plaintiffs").

**3.** After the Court denied summary judgment on this claim, the parties stipulated to the dismissal of all Director Defendants except Fu and Funari. *See* Motion at 4, n. 6.

centage of their compensation was tied to Syncor stock. *Id.* ¶ 141. As such, defendants had an incentive to keep the Plan's assets in the Syncor plan and to keep the Syncor Stock Fund investing in Syncor stock. *Id.* ¶ 142. This investment elevated the demand for Syncor stock in the market and retained a favorable impression of the stock with Wall Street analysts. *Id.*

The second cause of action focuses on the duty of Syncor and the remaining Director Defendants to properly monitor their appointees, including their appointees to the Plan committee. *Id.* ¶ 166. This duty included a duty to provide complete information to the appointees and to monitor the performance of the appointees. *Id.* ¶ 167. Plaintiffs allege that Syncor and the Director Defendants (collectively "Defendants") breached this duty by failing to warn their appointees of Syncor's illegal overseas practices and by failing to ensure the appointees "appreciated the huge risk inherent in the significant investment by rank and file employees in an undiversified employer stock fund." *Id.* 172.

Plaintiffs seek the following relief: 1) a declaration that the Defendants have breached their ERISA fiduciary duties to the participants; 2) a declaration that the Defendants are not entitled to the protections of ERISA section 404(c)(1)(B); 3) an order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' alleged breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investments; to restore to the Plan all profits the Defendants made through use of the Plan assets; and to restore all profits the Plan would have made if the Defendants had fulfilled their fiduciary obligations; 4) imposition of a constructive trust on any amounts by which the Defendants were unjustly enriched at the expense of the Plan; 5) an order enjoining Defendants from any further violations of their ERISA fiduciary obligations; 6) actual damages in the amount of any losses the Plan suffered to be allocated among the Plan participants' individual accounts in proportion to the accounts' losses; 7) an order that defendants allocate the Plan's recoveries to the accounts of all Plan participants who had any portion of their account balances invested in the common stock of Syncor maintained by the Plan in proportion to the accounts' losses; and 8) costs, attorney's fees and other equitable relief. (CC at 60:15–61:17.)

## B. The Instant Motion

Plaintiffs filed a Motion for Class Certification on January 7, 2005. The motion seeks to have the Plaintiffs' action certified as a class action. (Proposed Order Certifying Class Action ¶ 2.) The motion also seeks to have plaintiffs Carol Pilkington, Shirley Nobrega, and Pamela Thomson appointed as Class Representatives; the appointment of Keller Rohrback LLP and Schiffrin & Barroway LLP as Class Counsel; and the appointment of Lim, Ruger & Kim, LLP, as Liaison Counsel for the Plaintiff Class. *Id.* ¶¶ 4–5.

Plaintiffs propose the following definition of the class:

> All participants in the Syncor International Corporation Employees' Savings and Stock Ownership Plan and their beneficiaries, excluding the Defendants and their immediate family members, for whose accounts the fiduciaries of the Plan made or maintained investments in Syncor stock for the Plan between July 26, 2000 and January 1, 2003.

*Id.* ¶ 3.

Syncor and the Director Defendants (collectively "Defendants") filed an Opposition brief on February 7, 2005. Plaintiffs filed a Reply on February 22, 2005.

## III. APPLICABLE LAW

In determining whether to certify a class action, the district court may not inquire into the merits of the class representatives' underlying claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The district court is required to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 691 F.2d 1335, 1342 (9th Cir.1982) (internal citation omitted). However, the court also is required to consider the nature and range of

proof necessary to establish the allegations in the complaint. *Id.*

To be eligible for treatment as a class action, the representative parties must satisfy all four elements of Federal Rule of Civil Procedure 23(a) and one of the elements of Federal Rule of Civil Procedure 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

## IV. ANALYSIS

### A. *Rule 23(a)*

Federal Rule of Civil Procedure 23(a) provides that one or more members of a class may sue as representative parties on behalf of all class members if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). The parties seeking class certification bear the burden of showing that Rule 23(a)'s elements are satisfied. *In re Northern Dist. of California, Dalkon Shield IUD Products Liability Litigation,* 693 F.2d 847, 854 (9th Cir.1982).

■ Defendants contend that Plaintiffs do not satisfy Rule 23(a), but their primary argument does not focus on any of the specifically enumerated elements of Rule 23(a). Defendants instead appear to argue that the Plaintiffs' claims are, as a matter of law, inappropriate for class treatment because they are made on behalf of the Plan, not on behalf of individual Plan participants. (Opposition at 5:4–6.) According to Defendants, "this action cannot satisfy an essential prerequisite to invocation of the class mechanism, i.e., that there exist a multiplicity of individual claims being brought by a representative plaintiff with a typical claim." *Id.* at 8:5–7. Defendants appear to claim that this action cannot be treated as a class action because there is only one claim—on behalf of the Plan—as opposed to a collection of claims by individual defendants acting on their own behalf. Defendants cite no case law which establishes this allegedly "essential prerequisite." [4]

The Ninth Circuit has already spoken on this issue, and it has spoken against the Defendants' position. In *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449 (9th Cir.1995), the beneficiaries of an ERISA plan sought class certification in a lawsuit against the plan's fiduciaries under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2). The district court noted that, under *Massachusetts Mutual*

**4.** The Defendants cite three cases in support of their argument. As described below, none of these cases is relevant to the analysis here.

The Ninth Circuit's general description of class actions in *Eyak Native Village v. Exxon Corp.,* 25 F.3d 773, 781 (9th Cir.1994) fails to support Defendants' argument for two reasons. *See* Opposition at 5:6–10. First, as Plaintiffs correctly note, nothing in *Eyak* suggests that class actions are inappropriate when plaintiffs are not suing on behalf of themselves as individuals. Second, *Eyak* did not create, and did not purport to create, a new rule that only plaintiffs who sue on their own behalf can be part of a class action. Defendants' apparent reliance on *Kauffman v. Dreyfus Fund,* 434 F.2d 727 (3d Cir.1970) is also misplaced. The *Kauffman* court rejected class certification because the purported class representative lacked standing in his own right. *Id.* at 734 ("Because appellee...*does not have standing to assert a personal action,* it is evident that he may not serve as a class representative under Rule 23 on behalf of all similarly situated shareholders...") (emphasis added). In the instant case there is no question that Plaintiffs have

standing under 29 U.S.C. 1132(a)(2), which allows ERISA plan participants to sue for breaches of fiduciary duty under 29 U.S.C. § 1109.

*Nechis v. Oxford Health Plans, Inc.,* 328 F.Supp.2d 469 (S.D.N.Y.2004), is also inapplicable here. The plaintiff in *Nechis* alleged that the defendant had breached its fiduciary duty by failing to provide certain chiropractic benefits. 328 F.Supp.2d at 477. The court dismissed the claim because the plaintiff failed to allege harm to the ERISA plan and thus could not sue under ERISA Section 502(a)(2). *Id.* The court never addressed whether a plaintiff with an appropriate claim under Section 502(a)(2)—i.e. a claim to recover Plan assets—could be pursued as a class action. Moreover, the language from *Nechis* cited by Defendants about the distinction between class action suits and representative suits (*see* Opposition at 7:4–5) is dicta. Even if that language were relevant, it would be contradicted by contrary language in *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir.1994) ("Class action suits are representative suits brought on behalf of groups of persons who are similarly situated but who may or may not be parties to the suit.").

*Life Ins. Co. v. Russell,* 473 U.S. 134, 141, n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985),[5] the plaintiffs' lawsuit was on behalf of the ERISA plan as a whole. *Kayes,* 51 F.3d at 1461. The district court then held that because the plaintiffs' claim was not a "direct claim" (i.e. a claim seeking individual relief for plan beneficiaries qua beneficiaries), the plaintiffs' claims could not be typical of the class. *Id.* Since the plaintiffs' claims were not typical, they could not satisfy Federal Rule of Civil Procedure 23(a)(3). *Id.*

The *Kayes* court rejected the district court's reasoning. The Ninth Circuit instead held that "Rule 23(a)(3) imposes only the requirement that the class representatives' claims be typical, not that they be direct." *Id.* at 1463. The court specifically rejected the proposition that "any action which can broadly be characterized as derivative is inappropriate for class action treatment." *Id.,* n. 11.

Defendants attempt to limit *Kayes* to Rule 23(a)(3)—thus leaving open the proposition that ERISA actions under Rule 502(a)(2) could be ineligible for class action treatment for some other defect under the Rule 23. (Opposition at 5, n. 1 ("*Kayes* does not address, and therefore does not resolve, the issue of whether all of the elements of Rule 23, including those of Rule 23(b), can be satisfied in all ERISA actions.").) Whatever the limits of the holding in *Kayes,* that case rejects the exact same argument that Defendants have presented to the Court—namely that ERISA Rule 502(a)(2) actions are *per se* ineligible for class action treatment.

Even if *Kayes* were not controlling on this issue, the Defendants argument would fail. There is no question that any participant in the Plan—including but not limited to the Plaintiffs here—has standing to sue under ERISA Section * 502(a)(2), 29 U.S.C.

§ 1132(a)(2).[6] Defendants' argument ignores the fact that under ERISA Section * 502(a)(2) it is both possible and likely that several Plan participants could pursue a civil action for the same alleged breach of fiduciary duty. Although they would be seeking the same relief—i.e. recovery for the Plan as a whole—each of those participants would have an individual claim. As Plaintiffs correctly note, allowing these individual claims to move forward separately would create a risk of inconsistent judgments involving identical breaches of fiduciary duties by identical individuals—exactly the problem which class actions are designed to prevent. *See Donovan v. University of Texas at El Paso,* 643 F.2d 1201, 1206–07 (5th Cir.1981) ("the purpose of Rule 23 is to prevent piecemeal litigation to avoid (i) a multiplicity of suits on common claims resulting in inconsistent adjudications and (ii) the difficulties in determining the res judicata effects of a judgment.").

In the absence of any authority—persuasive or otherwise—which restricts the ability of ERISA participants to pursue a class action, and significant persuasive authority in support of such class actions,[7] the Court rejects the Defendants' claim that ERISA Rule 502(a)(2) actions for breach of fiduciary duty are ineligible for class action status.

Having dispensed with the Defendants' preliminary argument, the Court will address each element of Rule 23(a) in turn.

### 1. Numerosity

The Plaintiffs note that the Plan had more than 5,000 participants in 2000 and 2001. (Motion at 10:21–23.) The Ninth Circuit has found that classes with fewer than 100 members, and as few as 39, meet the numerosity requirement. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 & n. 10 (9th Cir.

---

**5.** In *Russell* the Supreme Court held that any claims under ERISA Section 502(a)(2) are brought on behalf of the ERISA plan as a whole, not on behalf of individual beneficiaries of the plan. 473 U.S. at 141, n. 9, 105 S.Ct. 3085.

**6.** 29 U.S.C. 1132(a)(2) allows ERISA plan participants to sue for breaches of fiduciary duty under 29 U.S.C. § 1109.

**7.** Several district courts have ruled that ERISA actions similar to the present action can be pur-

sued as class actions. *See Rankin v. Rots,* 220 F.R.D. 511, 514 (E.D.Mich.2004) (granting class certification in ERISA breach of fiduciary duty case); *In re Electronic Data Systems Corp. ERISA Litigation,* 224 F.R.D. 613, 634 (E.D.Tex.2004) (granting class certification in ERISA breach of fiduciary duty case); *In re Ikon Office Solutions, Inc., Securities Litigation,* 191 F.R.D. 457 (E.D.Pa.2000).

1982) (stating inclination "to find the numerosity requirement ... satisfied solely on the basis of the number of ascertained class members"). The Court finds that Plaintiffs have satisfied this requirement.

### 2. Commonality

Rule 23(a)(2) has been construed permissively; all questions of fact and law need not be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Id.*

Several questions of law and fact which are common to all prospective Class members, including their possession of Syncor stock and the Defendants' alleged breaches of duty to the Plan. The Court finds that Plaintiffs have satisfied this element.

### 3. Typicality

Representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Hanlon*, 150 F.3d 1011, 1020 (9th Cir.1998). This element is satisfied if the unnamed class members "have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Each of the plaintiffs was a Syncor employee and participated in the Plan during the class period. (CC ¶ 3.) If the allegations in the Consolidated Complaint are true, each member of the purported class suffered injuries as an indirect result of the same breaches of fiduciary duty by the remaining defendants. *See id.* ¶¶ 163, 176. The Court finds that Plaintiffs have satisfied this requirement.

### 4. Adequacy of Representation

This element is satisfied if (1) the named representatives appear able to prosecute the action vigorously through qualified counsel, and (2) the representatives do not have an-

tagonistic or conflicting interests with the unnamed members of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

Plaintiffs have provided ample evidence that they have retained qualified counsel. *See* Copley Decl. ¶¶ 3–4 (listing ERISA breach of duty cases in which Plaintiff's counsel have served as lead or co-lead counsel). There is no indication that Plaintiffs have interests which are antagonistic to the unnamed members of the class. The Court finds that Plaintiffs have satisfied this requirement.

### B. Rule 23(b)

Federal Rule of Civil Procedure 23(b) provides that an action may be maintained as a class action only if one of the three following criteria is satisfied:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

    (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

    (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of

members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b).

### 1. Rule 23(b)(1)(A)

Rule 23(b)(1)(A) is designed to cover cases where the defending party is "obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231.

Defendants cite *Molski v. Gleich*, 318 F.3d 937 (9th Cir.2003) for the proposition that an action which primarily seeks monetary relief cannot be certified under Rule 23(b)(1). (Opposition at 8:11–14, 9:21–23.) Unfortunately, the language cited by Defendants focuses on Rule 23(b)(2), not 23(b)(1). *See Molski*, 318 F.3d at 947 ("[I]n order to permit certification under [Rule 23(b)(2)], the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief.").

Defendants cite two other cases in support of their argument. The first, *Mateo v. M/S KISO*, 805 F.Supp. 761, 773 (N.D.Cal.1993), is easily distinguished on its facts. *Mateo* did not involve an action under ERISA Section * 502(a)(2); it involved a suit by workers who were seeking individual damages for

unpaid wages. *Id.* at 766. Unlike the Plaintiffs in our case, the *Mateo* plaintiffs were not suing on behalf of a common plan in which they and other non-parties had participated.

#### a. Zinser

The final case cited by Defendants, *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir.2001), presents a far closer issuer. *Zinser* was a products liability case involving allegedly defective pacemaker components. *Id.* at 1184. The plaintiff, Zinser, filed a lawsuit alleging products liability, medical monitoring and other claims. *Id.* She sought class certification for a sub-class of patients who were still implanted with the defective pacemaker (the "medical monitoring subclass"). *Id.* at 1185. This sub-class sought to force the defendant to establish a medical monitoring fund. *Id.* at 1194.

The district court rejected certification of the subclass under Rule 23(b)(1)(A). *Id.* at 1186. The Ninth Circuit affirmed, reasoning that "the medical monitoring claim *primarily seeks monetary damages.*" *Id.* at 1193 (emphasis added).[8] In explaining its holding, the court stated that "Rule 23(b)(1)(A) certification requires more... 'than a risk that separate judgments would oblige the opposing party to pay damages to some class embers but not to others or to pay them different amounts.'" *Id.* (citing Wright, Miller and Kane, Federal Procedure § 1773 at 431 (2d ed.1986)). As a consequence, the court said, "[c]ertification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages." *Id.* (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir.1976), and *McDonnell Douglas Corp. v. U.S. District Court*, 523 F.2d 1083, 1086 (9th Cir.1975)).[9][10]

---

**8.** Later in its opinion the *Zinser* court also stated that Rule 23(b)(1)(A) was inapplicable because the defendant could be required to implement two different medical monitoring programs without exposing itself to "incompatible standards of conduct" under Rule 23(b)(1)(A). 253 F.3d at 1195. Considering the court's prior rationale for denying certification—"[b]ecause we conclude that the medical monitoring claim primarily seeks monetary damages" (*id.* at 1193)—the Court considers this later rationale to be dicta.

**9.** In *McDonnell Douglas Corp. v. U.S. District Court, Central District of California*, 523 F.2d 1083, 1086 (9th Cir.1975), the court rejected the certification of a "class whose members have independent tort claims arising out of the same occurrence and whose representatives assert only liability for damages."

In *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir.1976), the plaintiffs sought to recover damages for transactions involving the defendant's securities. The Ninth Circuit, citing

Plaintiffs correctly note that the Ninth Circuit suggested in *Molski* that certification of a so-called mandatory class—including a Rule 23(b)(1) class [11]—"may be appropriate even when monetary damages are involved." 318 F.3d at 949. This language does not refute the holding in *Zinser*, however, because *Zinser* applies only where the relief sought is "primarily" monetary. 253 F.3d at 1193.[12] If Plaintiffs succeed in forcing Defendants to pay damages to the Plan, the Defendants would not be allowed to direct their payments to particular class members. Rather, the Defendants would be obligated to "treat the members of the class alike." Such an action would appear to be appropriately certified under Rule 23(b)(1)(A). *See Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. However, there is little dispute that the Plaintiffs "primarily" seek monetary damages; damages to the Plan, and demands that Defendants make the Plan whole, are the focus of the lawsuit. *See* CC ¶¶ 152, 164, 177. Given the Ninth Circuit's ruling in *Zinser*, this Court is constrained to DENY certification under Rule 23(b)(1)(A).

#### 2. *Rule 23(b)(1)(B)*

■ In contrast to Rule 23(b)(1)(A), which focuses on the rights of parties opposing the class, Rule 23(b)(1)(B) focuses on the rights of unnamed class members. *McDonnell Douglas*, 523 F.2d at 1086. Class actions are permitted under Rule 23(b)(1)(B) "only if separate actions 'inescapably will alter the substance of the rights of others having simi-lar claims.'" *Id.* (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466–67 (9th Cir.1973)). A classic example of a Rule 23(b)(1)(B) action is one which charges "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

The relief which Plaintiffs seek from Defendants would inure to the Plan as a whole. *See Russell*, 473 U.S. at 141, 105 S.Ct. 3085. If the primary relief is to the Plan as a whole, then adjudications with respect to individual members of the class would "as a practical matter" alter the interests of other members of the class—if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan.

Defendants argue that Plaintiffs cannot satisfy Rule 23(b)(1)(B) because they are primarily seeking monetary relief for the Plan. (Opposition at 9:21–23.) The Defendants' argument is unavailing for three reasons. First, the *Zinser* Court's holding with respect to monetary damages was specific to Rule 23(b)(1)(*A* ). 253 F.3d at 1193 ("Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages").[13] Second, as explained above, *Molski* applies to Rule 23(b)(2), not (b)(1)(A) or (b)(1)(B), and *Mateo* is inapplicable to our facts. Third,

---

*McDonnell Douglas*, held that in actions for damages *"ordinarily* there is neither the risk under rule 23(b)(1)(A) of 'inconsistent or varying adjudications' which would 'establish incompatible standards of conduct for the party opposing the class,' nor of adjudications impairing the rights of class members to protect their interests under (b)(1)(B) of the Rule." *Id.* at 1340 (emphasis added).

10. In her dissent from the majority opinion, Judge Fletcher noted that both *Green* and *McDonnell Douglas* involved plaintiffs who sought *only* damages. *Zinser*, 253 F.3d at 1200 (Fletcher, J., dissenting). Fletcher argued that the majority was improperly extending *Green* and *McDonnell Douglas* to cases in which the plaintiff seeks damages in addition to other relief. *Id.*

11. Mandatory classes are those in which there is no mandatory right to "opt out." When a class is certified under Rule 23(b)(1) or (b)(2), class members do not have mandatory "opt out" rights. *See Molski*, 318 F.3d at 947. Such rights automatically attach to Rule 23(b)(3) classes only. *Id.;* Fed.R.Civ.P. 23(c)(2)(B).

12. Plaintiffs argue that the Court's August 3, 2004, Order precludes a finding that the Plaintiffs are ineligible for Rule 23(b)(1). (Reply at 8:24–9:8.) The Court disagrees. The August 3 Order did not address class certification issues, and even if the Court were to find Plaintiffs ineligible for Rule 23(b)(1), the Plaintiffs could be certified under another provision of Rule 23.

13. The *Zinser* Court's analysis of Rule 23(b)(1)(B) was limited to the "limited fund" theory of the rule. 253 F.3d at 1197 (noting the requirements to "satisfy the limited fund rationale"). Plaintiffs are not pursuing a limited fund theory here.

this Court could find no other case which barred certification under Rule 23(b)(1)(B) just because the plaintiffs seek monetary relief.

For the reasons explained above, the Court finds that Plaintiffs' claims meet the requirements of Rule 23(b)(1)(B). The Court therefore **GRANTS** Plaintiffs' Motion for Class Certification under Rule 23(b)(1)(B).

### 3. *Rule 23(b)(2)*

█ Class actions which seek monetary damages may be certified under Rule 23(b)(2) if the monetary damages are "incidental" to the primary claim for injunctive relief. *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986). In the Ninth Circuit, damages are "incidental" when they are secondary to injunctive relief—i.e. when the plaintiff's primary goal was to gain an injunction, with a secondary goal of monetary damages. *See Molski,* 318 F.3d at 950, n. 14 ("our use of the word 'incidental' was intended to mean 'secondary' to injunctive relief"); *see also Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 860 (9th Cir.2001) (focusing on "the nature of the right asserted"). Under the Ninth Circuit's test, the district court must focus on the language of Rule 23(b)(2) and the "intent of the plaintiffs in bringing the suit." *Molski,* 318 F.3d at 950.

Plaintiffs argue that the Court cannot determine whether damages are "incidental" without looking to the merits of the claim. (Reply at 10:10–14.) They cite no cases which support this proposition.

After examining the Consolidated Complaint, the Court finds that the primary right which Plaintiffs seek to vindicate is the right of the Plan to recover any losses it sustained as a result of the Defendant's alleged breaches of duty. *See* CC ¶¶ 152, 164, 177. The terms of the Consolidated Complaint show that the Plaintiffs' primary intent in bringing the lawsuit was to force the Defendants to make the Plan whole. On these facts the Court **DENIES** certification under Rule 23(b)(2).

### 4. *Rule 23(b)(3)*

Because the Court finds certification is appropriate under Rule 23(b)(1)(B), the Court will not address certification under Rule 23(b)(3).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(1)(B).

**IT IS SO ORDERED.**

